UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DEBRA A. KURAK,**                                            Chapter 7
    Debtor                                            Case No. 08-13724-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**WARREN E. AGIN, CHAPTER 7
TRUSTEE,**
    Plaintiff
v.                                                             Adv. P. No. 08-1404
**SOUTH POINT, INC.,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matters before the Court are the Motion for Summary Judgment filed by the Plaintiff, the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Debra A. Kurak (the "Debtor"), and the Defendant's Opposition to the Motion. In his Motion, the Trustee seeks a summary judgment with respect to his two-count complaint through which he seeks a determination that the Defendant does not have a valid mortgage lien against the Debtor's interest in real property and that his strong-arm powers under 11 U.S.C. § 544 (a)

1

preclude the Defendant from seeking reformation of the mortgage. The Court heard the matters on June 2, 2009 and took the Motion for Summary Judgment under advisement.

The material facts necessary to determine the Motion and Opposition are not in dispute. The issue presented is whether the alteration of the mortgage after its execution by the Debtor divests the Defendant, South Point, Inc. (the "Defendant" or "South Point") of any mortgage interest in real property she jointly owns with a non-debtor. Resolution of the issue requires a determination of the effect of a version of a mortgage which differs from the one which was recorded by the Defendant's predecessor and upon which the Defendant relied in seeking relief from the automatic stay.

## II. FACTS

On May 21, 2008, Debra A. Kurak (the "Debtor") filed a voluntary Chapter 7 petition, together with her Schedules, Statement of Financial Affairs and other required documents. Warren E. Agin is the duly appointed Chapter 7 Trustee.

On her petition, the Debtor listed her address as 37-39 Falmouth Street, Attleboro, Massachusetts (the "property"). On Schedule A-Real Property, she listed an ownership interest in that property, while noting that it was "subject to a lien in the amount of $361,250.00 [for] which the Debtor has no contractual liability." She stated that the property was worth $330,000. On Schedule D-Creditors Holding Secured Claims, she listed no claims secured by her interest in the property.

On May 30, 2008, before the first scheduled meeting of creditors, South Point, Inc., ("South Point"), "as serviced by Wilshire Credit Corporation ("Wilshire")" [sic], filed a

Motion for Relief from the Automatic Stay seeking to enforce its rights under a note and mortgage encumbering the property. In its motion, South Point represented that, on September 22, 2006, Manuel Lopes ("Lopes") executed a note in favor of First Franklin, a Division of National City Bank ("First Franklin"), in the original amount of $361,250 and that the Debtor and Lopes simultaneously executed and delivered a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee of First Franklin. According to South Point, First Franklin recorded the mortgage in the Bristol County Registry of Deeds, and it is the assignee of the note and mortgage. South Point further represented that it is owed $389,719.72.

South Point attached to its Motion for Relief from the Automatic Stay a copy of a mortgage which contained the notation "Certified True Copy."[1] That mortgage identifies Lopes, and Lopes only, as the "Borrower." The term "Borrower" is defined on the first page of the mortgage as "the mortgagor under this Security Instrument." The Debtor signed the twelfth page of the mortgage above both the word "Witness," and the word

---

[1] Despite the characterization as a "Certified True Copy," this version of the mortgage was not the version that was ultimately recorded. The notation appears as follows on the top of the mortgage:

"CERTIFIED TRUE COPY"

_____
Signature
Certified Copy of the Original
Sent for Recording

_____

3

"Borrower" crossed out with five typed x's. The Trustee attached a copy of this version of the mortgage to his Affidavit in Support of his Motion for Summary Judgment as Exhibit C.

South Point subsequently produced a recorded mortgage in support of its Motion for Relief from the Automatic Stay. That mortgage identifies both Lopes and the Debtor as "Borrower" as follows: "'Borrower' is `MANUEL LOPES & Debra Kurak`." On the signature page, the mortgage contains both their signatures over the word "Borrower," defined in the same manner as set forth above (i.e., "the mortgagor under this Security Instrument"). Their signatures appear under the following language: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants in pages 1 through 12 of this Security Instrument and in any Rider Executed by Borrower and recorded with it."

J. Daniel Lindley, Esq., as the attorney representing First Franklin, conducted the closing on September 22, 2006 at which Lopes executed the note to First Franklin. The closing occurred at the residence co-owned by Lopes and the Debtor. Both Lopes and the Debtor signed the last page of the mortgage, which contained Lindley's notarization, although the record reflects that the Debtor's capacity as signatory was as "Witness" in one version and as "Borrower" in the recorded version of the mortgage.

Lindley, at his 2004 examination, testified that he took the mortgage to his office and made copies for distribution. He stated that he made, or caused to be made, three copies of the mortgage: one for Lopes (Exhibit D to the Trustee's Motion for Summary Judgment), one for his file (Exhibit F to the Trustee's Motion for Summary Judgment), and one for First

4

Franklin. A copy of a mortgage produced by Lopes's counsel and given to the Trustee, which the Trustee attached to his Motion (Exhibit D), identifies Lopes as the only Borrower on page one and does not contain a signature page. The first page of that mortgage is the same as the mortgage that South Point initially attached to its Motion for Relief from the Automatic Stay which contains the notation Certified True Copy at the top (Exhibit C to the Trustee's Affidavit in Support of His Motion for Summary Judgment). The version of the mortgage attached as Exhibit F to the Trustee's Motion is the same version upon which South Point ultimately relied in seeking relief from the automatic stay and upon which it relies in opposing the Trustee's Motion, namely the recorded mortgage which identifies both Lopes and the Debtor as Borrowers and contains both their signatures as Borrowers.

There is no question that the Debtor signed a mortgage and that Lindley notarized her signature. Additionally, she and Lopes initialed each page of the mortgage, and Lindley's notarization appears as follows:

> Commonwealth of Massachusetts,    Bristol County    ss:
>
> On this *22nd day of September, 2006* , before me personally appeared
> MANUEL LOPES *and Debra Kurak*
> to me known to be the ~~person~~ (or persons) described in and who executed
> the foregoing instrument and acknowledged that
> ~~he/she/~~they executed the same as ~~his/her/~~their free act and deed.
>
> /s/ J. Daniel Lindley
> J. Daniel Lindley    Notary Public
> My commission expires *06/14/13*[2]

In addition to the definition of Borrower on page 1 of the mortgage, page 3 of the

---

[2] Handwritten insertions appear in italic.

5

mortgage contains the following language:

> TRANSFER OF RIGHTS IN THE PROPERTY
> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, *Borrower does hereby mortgage, grant and convey* to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, *the following described property . . . .*

(emphasis supplied) (Exhibit F to the Trustee's Motion for Summary Judgment and Exhibit 1 to the Affidavit of Richard C. Demerle, Esq. attached as Exhibit A to South Point's Memorandum in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment).

Lindley's deposition testimony explains why multiple versions of the mortgage exist.  He testified as follows:

> . . . Apparently - - I spoke to Lindsay [Lindley's assistant], who has no memory of this closing at all, but apparently when we faxed the executed mortgage to the lender, the lender called back and asked that Debra Kurak's name be included on the front page of the mortgage.  And I believe - - and Lindsay thinks she may have done that.  And that's where that "and Debra Kurak" came from on the front page.

He added:

> . . . I noticed on page 12 someone had x'd out the word "borrower" and typed in the word "witness."  That doesn't appear on my documents or the Registry of Deeds' documents, so I can only figure that someone in the lender's office did that.

> Now this exhibit doesn't show the ampersand Debra Kurak on the first page that the others do, so I'm  - - it's my opinion that this is a copy of the mortgage as my paralegal faxed it to the lender. And, based on that the lender instructed her to add the ampersand Debra Kurak.

6

> Later, someone seeing that Debra Kurak's name was not on there struck out the word "borrower" and put in the word "witness," but she was - - I know from having done closings that even though only one owner may be the borrower, all owners have to sign the mortgage. Otherwise, nobody can foreclose on it.
>
> And that's why I had Debra sign and initial all of the documents having to do with the mortgage. She was signing in the capacity as a - - mortgagor, not as a borrower, because she wasn't on the loan but as a mortgagor.

Because the Debtor initialed every page of the mortgage and signed it as Borrower, the Court accepts Lindley's testimony that he or someone in his law office subsequently added the Debtor's name to the first page of the mortgage ("& Debra Kurak") after he or his employees had sent copies to both Lopes and First Franklin. The Court has insufficient information to determine when or why the word "Borrower" was crossed out and replaced with the word "Witness" on the copy with the notation "Certified True Copy."

**III. DISCUSSION**

A. <u>Summary Judgment Standard</u>

The United States Court of Appeals for the First Circuit has stated:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

<u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 763 (1st Cir.1994) (citations omitted,

footnote omitted).  In view of that standard, the Court finds that there are no genuine issues of material fact and the Motion for Summary Judgment is ripe for resolution.  The question presented in this case requires a determination of a legal issue only, namely the effect of the omission of the Debtor's name on the first page of the mortgage at the time she executed it where the "Borrower" is identified only as Manuel Lopes, but where the Debtor initialed every page of the mortgage, signed it as Borrower, and Lindley notarized her signature as her free act and deed. The question also can be posed in another way: Was the alteration of the mortgage after execution to add the Debtor's name a material alteration in view of the Debtor's signature as Borrower?

    B. Positions of the Parties

The Trustee argues that because First Franklin's attorney altered the mortgage by adding her name after the Debtor executed it, South Point does not have a valid mortgage against the Debtor's interest in the property.  He cites Malaguti v. Rosen, 262 Mass. 555 (1928), for the proposition that a mortgage deed is a form of contract.  Extrapolating, he contends that as with any contract, the terms of the mortgage must be determined by looking at the "four corners" of the document, without recourse to extrinsic evidence.  He further argues that at the time the mortgage was executed, it was a mortgage deed from Lopes to First Franklin, not a mortgage deed from Lopes and Kurak to First Franklin. Thus, according to the Trustee, the mortgage did not grant a mortgage in Kurak's interest in the Falmouth Street property as a matter of law.  Relying upon Smigliani v. Smigliani, 385 Mass. 84, 90-91 (1970), the Trustee adds that Lindley's alteration of the mortgage to add

the Debtor's name to the first page was invalid and cannot change the scope of the mortgage.[3]

The Trustee recognizes exceptions to the general rule in the event of a mutual mistake that makes the mortgage ineffective to accomplish the parties' intentions, a circumstance that would permit the use of equity to reform the mortgage in order to conform to the parties' actual intentions. He also recognizes that where the grantor of a deed is present and assents to the alteration, the grantor might be estopped from asserting the invalidity of the deed. *See* Long v. Lowery, 43 Mass. 414, 418 (1923). He notes that

---

[3] In Smigliani, the court stated:

> [T]he legal principle on which we base our decision is well settled. As heretofore noted, when the deed was delivered the plaintiff and his wife were named therein as grantees. Before the instrument was recorded the names of the plaintiff and his wife were erased and the name of the corporation substituted. Further, there is no evidence that the substitution of the grantee was made in the presence or with the authority of the grantors. . . . In the case of Carr v. Frye, 225 Mass. 531, 114 N.E. 745, where the grantee of land, having received a completed deed in his name, caused his name to be erased as grantee and that of his wife substituted therefor before the deed was recorded, this court stated, 'The erasure of his name and the insertion of the name of * * * (his wife) did not divest him of his estate nor transfer it to her. It was his property and remained so, although the record title was in her name. * * * 'When a person has become the legal owner of real estate, he cannot transfer it or part with his title, except in some of the forms prescribed by law. The grantee may destroy his deed, but not his estate.'' Id. at 532-533, 114 N.E. at 745. Likewise, in the instant case, the altered instrument was ineffective as a conveyance to the corporation. It conveyed no title. Therefore the plaintiff has continued to retain his undivided interest in the property.

358 Mass. at 90-91.

9

neither circumstance exists in this case.

South Point maintains that the insertion of the Debtor's name did not create after the fact liability because she had signed the mortgage as Borrower and granted an interest in the property as mortgagor.

C. Analysis

"Every deed presented for record shall contain or have endorsed upon it the full name, residence and post office address of the grantee . . . ." Mass. Gen. Laws ch. 183, § 6. "Massachusetts is a 'title theory' state in which a mortgagee is considered to have legal title to the land, subject only to the mortgagor's right to redemption on satisfaction of the conditions of the mortgage." Edward C. Mendler, Massachusetts Conveyancers' Handbook with Forms (4$^{th}$ ed. 2008). In the instant case, the Debtor was not identified as a grantor of the mortgage until after she executed the mortgage to First Franklin. Although the Court has been unable to find any modern cases that directly address whether the insertion of the Debtor's name after the execution of the mortgage constitutes a material alteration, several early Massachusetts cases are instructive.

In Kendall v. Kendall, 94 Mass. 92 (1866), the plaintiff brought an action against the defendant and his assignee to foreclose a mortgage. The mortgage on its face purported to have been witnessed and to have been executed by the defendant's deceased wife, releasing her dower and homestead. The authenticity of the deceased wife's signature was not established and there was insufficient evidence for the court to determine who was responsible for the alteration of the mortgage, although the defendants attempted to prove

10

that the mortgage was fraudulently altered by the addition of the deceased spouse's signature after it was acknowledged and executed by the defendant and delivered to the plaintiff. The court noted that the defendants relied upon the principal that such an alteration "avoids the whole instrument, as well what was originally effective and binding as that which has been superadded [sic] by the subsequent fraudulent alteration." 94 Mass. at 93. The court, however, rejected the defendants' defense to the foreclosure action, distinguishing between executory contracts and conveyances of real property. Because the defendant's spouse was deceased, her signature on the mortgage did not affect the rights of the parties to it.

In Burns v. Lynde, 88 Mass. 305 (1863), the Supreme Judicial Court reached a different conclusion. In that case, a married woman signed and sealed a blank form of a deed and granted her spouse parol authority to insert her name into the deed so as to convey her rights of dower and homestead in her husband's land. After the instrument had been completed in her absence, and signed and delivered by her husband, she commenced an action in equity to compel the grantee to reconvey her estate in the premises, although the grantee acted in good faith and provided services to her husband and supplies to her family. The court framed the issue as follows:

> The defendant offered to prove that when she signed it she authorized him to fill it up as he did; and that after it was filled up, and the husband had executed it, the defendant informed her of the facts, and she thereupon verbally assented to what had been done, and agreed that it should be taken to be her deed duly executed. This evidence was rejected; and the question presented is, whether these facts, if proved, would have made the instrument valid as her deed.

11

The court answered the question in the negative. It concluded:

> In the present case, there was no redelivery of the instrument after the blanks were filled. All that the defendant offered to prove was, that he communicated the facts to Mrs. Burns, and she assented to what he had done, and consented that he might hold it as her deed. If the deed had been present and exhibited to her at the time, and she had been made fully acquainted with its contents by reading or otherwise, and had it under her control, and had then consented that the defendant should take it as her deed, it would have been legally delivered in a perfect state. But without the presence of the deed, nothing equivalent to this could take place.
>
> When the paper was delivered, it had no validity or meaning. The filling of the blanks created the substantial parts of the instrument itself; as much so as the signing or sealing. If such an act can be done under a parol agreement, in the absence of the grantor, its effect must be to overthrow the doctrine that an authority to make a deed must be given by deed. We do not think such a change of the ancient common law has been made in this commonwealth, or that the policy of our legislation favors it, or that sound policy would dictate such a change. Our statutes, which provide for the conveyance of real estate by deed, acknowledged and recorded, and for the acknowledgment and recording of powers of attorney for making deeds, are evidently based on the ancient doctrines of the common law respecting the execution of deeds; and a valuable and important purpose which these doctrines still serve is, to guard against mistakes which are likely to arise out of verbal arrangements, from misunderstanding and defect of memory, even where there is no fraud.

Id. at 310-11. Courts in other jurisdictions have reached similar conclusions. *See, e.g.*, Ethridge v. Tierone Bank, 226 S.W.3d 127 (Mo. 2007).[4]

The Court finds that the decision in Burns is compelling, although the case is distinguishable from the instant case. In Burns, the plaintiff spouse was alleged to have authorized the insertion of her name into the deed, while in the instant case, there is no

---

[4] The case cited by the defendant, Nourse v. Jennings, 180 Mass. 592 (1902), does not address the issues before the court. While the case deals with an agency question, the Defendant did not and cannot contend that Lindley was an agent of the Debtor.

12

evidence or even allegation that the Debtor authorized her name to be added to the first page of the mortgage, identifying her as a Borrower.  Thus, her name did not precede the granting language utilized in the form of mortgage.  Lindley, or someone in his office, added her name to the mortgage without her authority and did not obtain and notarize her signature on the mortgage after it was amended.

Based upon the undisputed facts, as well as the decision in Burns, the Court concludes that the alteration of the mortgage by Lindley or one of his employees, was material and voids the mortgage as to her interest in the property.  Indeed, the lender apparently concluded that the change was critical or it would not have requested the alteration.  While the decision is a close one, it is supported by public policy.  The opinion in Burns rested in part on public policy, and that policy is as important today as it was in 1863.  The Supreme Judicial Court determined that titles to real estate should not be held hostage to disputes over the parties' intention.  It stated:

> [I]t is highly useful that a class of instruments should exist, to which persons may resort with a feeling of confidence that they shall not be binding till they are formally executed, and that when thus executed they shall not be liable to be varied or controlled by parol evidence. The importance of these formalities is greatly increased by the fact that parties are now made competent witnesses. The convenience which men might occasionally find in leaving blanks in sealed instruments to be filled after delivery, would be but a slight compensation for the evils which would follow the abrogation of the ancient rule of the common law.

Id. at 312.

Reference to general contract principles is warranted and supports reliance upon Burns.

13

> Under the common law, the unauthorized material alteration of a written instrument by a party thereto, or the holder of it, voids the instrument and the person responsible for the alteration may not recover upon it as altered, nor may anyone claiming through the altering party, even in accordance with its original tenor. The basis of the common-law rule is that any material alteration destroys the identity of the contract, and therefore, if a party to the contract who has not consented to its alteration were to be held bound by it, it would in effect impose a new contract to whose terms the party has never agreed.

4 Am. Jr. 2d Alterations of Instruments § 24 (2009).  With respect to mortgage deeds in particular, as a general rule, until delivery of a deed or mortgage the grantor may make alterations and insertions.  *See* Herbert T. Tiffany and Basil Nones, Tiffany Real Property, § 989 (September 2008).  "An alteration made, after delivery, by consent of all the parties to the conveyance, is binding and effective if it is followed by a new delivery of the instrument, insofar as no proprietary rights vested in the grantee by the conveyance as it originally stood are divested by such alteration," id. (footnotes omitted), but "[a]n alteration made after the delivery of the conveyance is absolutely nugatory to divest property rights vested in the grantee by the conveyance." Id.  Thus, for example, if the name of the grantee is altered, the alteration will not divest the grantee of his title.  Chessman v. Whittmore, 40 Mass. 231, 234 (Mass. 1839).  *See also* 4 Am. Jr. 2d Alterations of Instruments § 27 (2009).

Finally, in a criticism of the decision in Kendall, commentators have stated:

> An alteration in a mortgage instrument, made by the mortgagee after its delivery, without the consent of the mortgagor, has been decided, in a number of cases, to invalidate the mortgage, except where the change is made with the mortgagor's consent. . . . The correctness of the decisions that an alteration invalidates the mortgage depends on the correctness of the theory that the rights of one who has a mortgage lien are purely executory, and this is perhaps open to question. The execution of the mortgage, even in states where it does not pass the legal title to the land, vests in the mortgagee

> a lien, involving a power to effect the sale of the land, in case of default in the obligation secured, and such lien and power cannot, it would seem, be divested by a subsequent alteration of the mortgage. In any state, however, in which a conveyance is, after alteration, inadmissible in evidence, the mortgage would be subject to a like rule, so as to be practically nugatory as a result of the alteration, although in theory the lien still exists.

Id. *See also* 30 Richard A. Lord, Williston on Contracts § 75:15 (4th ed. May 2009)("[t]he general rule with respect to rights to collateral security is that a fraudulent or material alteration of a mortgage by the mortgagee or its agent will destroy the lien created upon the property described in the mortgage instrument.").

The instant case is distinguishable from those cases in which a grantor signs and seals a deed, leaving unfilled blanks and gives an agent authority to fill in the blanks. Where an innocent grantee without knowledge accepts the deed or mortgage, courts have held that the grantor is estopped to deny that the deed as delivered was his deed. *See* Bretta v. Meltzer, 280 Mass. 573, 575-76 (1932). In the instant case, Lindley was not the Debtor's agent. Rather, he was the agent of First Franklin. While the Debtor executed the signature page of the mortgage as Borrower, her signature cannot excuse a material alteration in the mortgage, particularly where her name did not precede the granting language in the mortgage. Additionally, the definition of the term "Borrower" as "mortgagor under this Security Instrument" would not be evident without a close reading of the mortgage. Thus, the Court determines that the mortgage is not valid with respect to the estate's interest in the property.

**IV. CONCLUSION**

In view of the foregoing, the Court shall enter an order granting the Trustee's

Motion for Summary Judgment.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 15, 2009
cc: Warren E. Agin, Esq., Richard C. Demerle, Esq., U.S. Trustee